[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed October 9, 1996
The plaintiff, BRT Property Group filed this action to recover the sum of Nine Thousand Four Hundred Seven and 88/100 Dollars ($9,407.88) which it paid to Willow Springs Condominium Association as the owner of 62 non-owner occupied units, above what it would have had to pay as a unit owner.
The basic facts governing this case have been stipulated. CT Page 6360 Appendix A.*
On or about November 19, 1993 Willow Springs Condominium Association, Inc. (hereinafter the "Association") obtained liability insurance complete with directors and officers liability coverage from the New London County Mutual Insurance Company (hereinafter "New London") at a price of Twenty-Three Thousand Three hundred Sixty-Nine Dollars ($23,369.00).
The Association budgeted Thirty Two Thousand Dollars ($32,000.00) for insurance for 1994. On or about January 12, 1994, the Association received a Notice of Cancellation of insurance from New London indicating that the Association's coverage would be cancelled as of midnight on March 15, 1994. The Notice of Cancellation issued by New London stated that the sole reason for cancellation was that 46% of the units at the Willow Springs complex were investor/rental units not occupied by the unit owner.[1] Following receipt of the notice of cancellation, the Association's Management Company, REI Property and Business Development and Management, Inc. (hereinafter "REI") attempted to secure insurance coverage from other companies through numerous agents.
As of March 9, 1994, REI learned that no company was willing to write insurance for the Association. Some four agencies and twelve companies in all were contacted. During this period, REI continued to work with two insurance agencies located in Danbury, Connecticut. As of March 10, 1994, the Association still had no commitment of insurance from any company with March 15, 1994 termination date fast approaching. Finally, on Monday, March 14, 1994, at 5:00 p.m., the Association was in possession of two quotes for insurance. One quote was for Seventy-one Thousand Twenty-five Dollars ($71,025.00) and one was for Seventy-three Thousand Five Hundred Fifty-eight Dollars ($73,558.00). The latter quote was ultimately selected due to the fact that it provided appropriate flood coverage.
As of Tuesday. March 15, 1994, the insurance coverage package was put into place. The total cost for the insurance coverage package was Eighty Thousand Four Hundred Seventy Four and 96/100 Dollars ($80,474.96).
The total budget for insurance for the Association for the year was Thirty-two Thousand Dollars ($32,000.00). Deducting the new insurance cost from the budget figure left a shortfall of CT Page 6361 Forty Eight Thousand Four Hundred Seventy-four and 96/100 Dollars (48,474.96).
On or about April 21, 1994, the Association through its board of directors, pursuant to Connecticut General Statutes Section47-257(c) and Declaration Sections 19.2(c) and 19.5, assessed this added insurance expense against the 163 non-owner occupied units arriving at a figure of Two Hundred Ninety-eight and 09/100 Dollars ($298.09) per unit. This figure was then divided into eleven (11) equal installments of Twenty-seven and 10/100 Dollars ($27.10). If the additional cost had been assessed equally amongst the 332 units, each non-owner occupied unit would save One Hundred Fifty-one and 74/100 Dollars ($151.74). Accordingly, the net additional assessment that the plaintiff is seeking is Nine Thousand Four Hundred Seven and 88/100 Dollars ($9,407.88) (BRT's 62 units times $151.74).
On Sunday, March 13, 1994, two (2) days prior to the date upon which the Association's insurance was to be terminated, the Association had no insurance options. On Monday, March 14, 1994, the Association received two quotes for its insurance coverage. Both quotes were well above the Thirty-two Thousand ($32,000.00) Dollar figure which the Association had budgeted for its insurance costs.
Section 22.3 of the Condominium Declaration states in part: "The Association shall maintain liability insurance . . ." The Declaration, therefore, requires the Association to maintain liability insurance.
The plaintiff cites Section 3.2 of the Condominium By-Laws which states in part: "The Association shall not exceed its budget by Four Thousand Dollars ($4,000.00) or 20% of any single budget line item without an annual or special meeting." However, Connecticut General Statutes Section 47-222(c) states that in the event of any conflict between the provisions of the Condominium Declaration and the Condominium By-Laws, the Condominium Declaration shall prevail. Declaration section 27.5 states that in the event of a conflict between the provisions of the Declaration and any other instrument, which would include by-laws, "the Declaration shall control."
Moreover, the plaintiff's argument, as it relates to Section 3.2 of the Condominium By-Laws, presupposes that an annual or special meeting for the purpose of discussing the new insurance CT Page 6362 quotes would have been possible. With the two quotes for new insurance only having been secured two days prior to the New London termination date, there was no time for any such meeting. Section 3.5 of the By-Laws requires not less than ten (10) days notice to unit owners in advance of any meeting.
On or about April 21, 1994, the Association assessed the excess insurance cost over the Thirty-two Thousand ($32,000.00) Dollar budgeted figure against those units which were not occupied by the unit owner. The Board of Directors is empowered pursuant to Declaration Section 19.5 to render special assessments without a meeting.
The plaintiff claims that the allocation by the Association of the additional insurance costs violated the Connecticut General Statutes, the Condominium Declaration and By-laws. A review of the Common Interest Ownership Act, the Condominium Declaration and By-laws, however, validates the actions taken by the Association.
Connecticut General Statutes Section 47-257(c) states in part: "to the extent required by the Declaration: . . . (3) the costs of insurance shall be assessed in proportion to risk and the costs of utilities shall be assessed in proportion to usage." By assessing the incremental increase in insurance costs to those units which are non-owner occupied, the Association properly assessed the costs of insurance in proportion to the risk. The cancellation notice from New London states that the policy was terminated for one reason and one reason only, namely, a large number and high percentage of non-owner occupied units at the complex. Additionally, Connecticut General Statutes Section47-257(c) by its own language deferred to the provisions contained within the Condominium Declaration. Article XIX of the Willow Springs Condominium Declaration is entitled "Assessment and Collection of Common Expenses." Section 19.2 of the Condominium Declaration is entitled "Common Expenses Attributable To Fewer Than all Units." Subsection 9(c) of Section 19.2 of the Declaration states "Any insurance premium increase attributable to a particular unit by virtue of activities in or construction of the unit shall be assessed against that unit."
New London cancelled the Association's liability policy due to the fact that 46% of the units at the complex were non-owner occupied rental units. The incremental increase in insurance coverage costs is solely attributable to those unit owners who CT Page 6363 rent out their units and rental activity in a unit creates an increased risk of loss. The Association followed the mandate contained within Section 19.2(c) of the Condominium Declaration when it assessed the incremental insurance cost increase to non-owner occupied units which was also consistent with General Statutes Section 47-257(c)(3).
Under the circumstances, the statutory duty, and duly set forth in the Condominium Declaration Sections 22.1 and 22.3, to maintain insurance, particularly liability insurance, took precedence over mere By-law Section 3.2 and the meeting requirement. Furthermore, the meeting requirement was impossible to comply with due to the circumstances and the notice requirements of Section 3.5 of the By-Laws. It does not appear that the plaintiff contests the purchase of insurance without a meeting. Rather, the plaintiff is seeking to have the assessment uniformly spread over all unit owners. It is clear, pursuant to the statutes and declaration, that the Association was not only authorized, but required to specially assess and allocate the cost increases as it did.
For the reasons stated, judgment is rendered in favor of the defendant, Willow Springs Condominium Association, Inc.
PICKETT, J.